IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHANNON SLUSSER,                  : Civ. No. 1:24-CV-2163
                                  :
            Plaintiff             :
                                  :
    v.                            :
                                  : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                  :
Commissioner of Social Security,[1] :
                                  :
            Defendant             :

## MEMORANDUM OPINION

## I.  Introduction

Shannon Slusser filed a Title XVI application for supplemental security income on July 31, 2022.  (Tr. 10).  Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Slusser was not disabled from his alleged onset date of disability of July 27, 2022, through January 26, 2024, the date of the ALJ's decision.  (Tr. 21).

Slusser now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, we

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

1

conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    <u>Statement of Facts and of the Case</u>

On July 31, 2022, Slusser applied for supplemental security income benefits under Title XVI of the Social Security Act, citing an array of physical impairments, including neuropathic pain, lumbar paraspinal spasms, acute gout of the hand, viral upper respiratory infection with cough, acute tonsilitis, and pneumonitis. (Tr. 13). Slusser was 44 years old at the time of the alleged onset of disability, had a partial high school education, and had past employment as a machine mixer. (Tr. 42).

With respect to his alleged impairments[2] the record revealed the following: Slusser underwent right sacroiliac fusion surgery in September of 2018, nearly four years before his alleged onset of disability. (Tr. 1165). In June of 2022, a few weeks before the relevant period, Slusser consulted with his primary care provider ("PCP"), Dr. Albert

---

[2] Because we find that remand is necessary due to a lack of substantial evidence supporting the omission of standing and walking limitations from the RFC, we will forego discussion and analysis of Slusser's allegation that the ALJ erred in finding his diverticulitis nonsevere.

Alley. (Tr. 398). Slusser explained to Dr. Alley that he had been dealing with back pain ever since the surgery, but the pain had recently worsened significantly after Slusser shoveled some gravel in his yard. (*Id.*). Dr. Alley noted Slusser was suffering from constant pain radiating from his lower back, a decreased range of motion, and difficulty walking. (*Id.*). Slusser followed up with Dr. Alley on July 8, 2022, reporting that his back pain had gotten worse. (Tr. 394). Slusser alleges he became disabled on July 27, 2022. (Tr. 10).

The first medical records within the alleged period of disability are from August 2022, when Slusser visited with Dr. Alley seeking a refill for his Lyrica prescription. (Tr. 392). Dr. Alley noted that Lyrica had been keeping Slusser's pain in check, and an examination revealed localized musculoskeletal tenderness and peripheral neuropathy. (Tr. 392-93).

Slusser saw Licensed Practical Nurse ("LPN") Judy Rodriguez at Dr. Alley's office in October of 2022, at which time he complained of pain, swelling, erythema, and warmth in both of his hands. (Tr. 388). LPN Rodriguez identified the issue as gout, and noted bilateral swelling and clawing of the fingers, and moderate pain. (*Id.*). She prescribed Meloxicam and oral Prednisone. (Tr. 389). Around this time, Slusser

3

was examined by Certified Registered Nurse Practitioner ("CRNP") Tara Cywinski. (Tr. 353-71). She noted, *inter alia*, that Slusser walked with "very unstable" antalgic gait favoring his right side, could not walk on his heels and toes, and had an outbreak of gout in his hand. (Tr. 353-56). She opined that Slusser had significant limitations to his abilities to lift, carry, sit, stand, and walk. (Tr. 361-65).

Slusser returned to Dr. Alley's office in June of 2023 to treat a chest cold. (Tr. 1311). At this visit, Slusser also reported numbness, paresthesia, and back pain, but Dr. Alley's examination showed normal results. (Tr. 1312). Slusser consulted with Dr. Alley again in October of 2023, asking Dr. Alley to sign paperwork related to Slusser's application for supplemental security income. (Tr. 1307). Slusser reported pain, numbness, and a reduced range of motion. (*Id.*). Dr. Alley noted localized tenderness and lumbar paraspinal muscle spasms, but the examination results were otherwise normal. (Tr. 1308). Dr. Alley told Slusser that he would not sign the paperwork, and that Slusser should instead follow up with the doctor that performed his 2018 surgery. (*Id.*).

It is against this factual backdrop that the ALJ conducted a hearing in Slusser's case on December 12, 2023. (Tr. 10). Slusser and a vocational

expert ("VE") both testified at this hearing. Slusser testified about his hip and leg pain, how he helps his father and his wife around their home, and how his pain affects how much help he can give. (Tr. 47-57). The VE in his testimony first classified Slusser's past work, then answered hypothetical questions about a claimant with Slusser's background and specific types of limitations. (Tr. 61-69).

Following this hearing, on January 26, 2024, the ALJ issued a decision denying Slusser's application for benefits. (Tr. 10-21). In that decision, the ALJ first concluded that Slusser had not engaged in substantial gainful activity since his application date. (Tr. 13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Slusser suffered from the severe impairments of neuropathic pain and lumbar paraspinal muscle spasm. (*Id.*). At Step 3 the ALJ determined that Slusser did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 14).

Between Steps 3 and 4 the ALJ concluded that Slusser retained the following residual functional capacity to:

> [P]erform light work as defined in 20 CFR 416.967(b) except
> he can occasionally balance, stoop, kneel, crouch, and climb
> ramps or stairs, but never crawl or climb ladders, ropes, or
> scaffolds. He can frequently work at unprotected heights, with
> moving mechanical parts, and operate a motor vehicle. He can
> have frequent exposure to weather, humidity, wetness,
> extreme cold, extreme heat, and vibration. He can be exposed
> to loud noise. He is limited to occasional pushing and pulling
> with the right upper extremity and occasional repetitive
> pedaling with the bilateral lower extremities.

(Tr. 14-15).

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered Slusser's reported symptoms and found that Slusser's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 16). The ALJ also found that "[o]verall, the longitudinal evidence of record does not support the claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms." (Tr. 17).

The ALJ next considered the medical opinions on record. He was partially persuaded by the opinion of state agency medical consultant Dr.

Edwin Malloy. (Tr. 17). The ALJ found Dr. Malloy's opinion—which included that Slusser had limitations in lifting, carrying, standing, walking, and sitting—was supported by, but also inconsistent with, various portions of the medical record evidence. (Tr. 18). The ALJ explained that Slusser's prior fusion surgery, positive straight leg raises, gait imbalance, and low back pain all supported Dr. Malloy's opinion. (*Id.*). But the ALJ noted some limitations Dr. Malloy opined as necessary were based on a single finding of gout, and the ALJ believed the resultant limitations were not consistent with medical evidence showing no recurring or chronic gout, nor with certain statements in Slusser's testimony. (*Id.*). The ALJ instead found that "evidence available at the hearing level . . . is consistent with a limited range of light exertion work [.]" (*Id.*). The ALJ did not address what evidence led him to discount Dr. Malloy's limitations regarding standing and walking.

The ALJ found the opinion of Dr. Catherine Smith to be somewhat persuasive. Dr. Smith opined, *inter alia*, that Slusser could "stand and/or walk [four] hours in an [eight]-hour workday." (Tr. 18). While the ALJ noted that certain findings supported Dr. Smith's opinion generally, the ALJ could find "no specific explanation for a limitation to standing and

7

walking [four] hours in an [eight]-hour workday or support in the medical evidence of record for such a limitation." (*Id.*). The ALJ found this opinion also improperly relied on the same single showing of gout. (*Id.*). The ALJ found Dr. Smith's opined limitation of cane usage was inconsistent with evidence that Slusser's pain was "controlled with use of Lyrica [.]" (*Id.*).

The ALJ also considered CRNP Cywinski's opinion and found it unpersuasive. (Tr. 19). She opined that Slusser had significant postural limitations, and that "in an [eight]-hour workday, he could sit for 30 minutes, stand for 15 minutes, and walk for 10 minutes." (*Id.*). The ALJ noted that Cywinski's opinion was supported by some of her clinical observations but was undermined by other results, specifically those showing no sensory defects, no use of an assistive device, and 4/5 leg strength. (*Id.*). The ALJ also found Cywinski's opinion inconsistent with Slusser's testimony about his ability to stand for 30-45 minutes. (*Id.*).

Finally, the ALJ considered the opinion of Dr. Leon Francis. Dr. Francis opined that Slusser could sit for six hours and stand or walk for two hours in an eight-hour workday. (Tr. 19). The ALJ acknowledged this opinion was consistent with MRI studies in the record but concluded

8

the opinion was unpersuasive because it was provided "long before the period at issue." (*Id.*). The ALJ also noted that "limitations regarding sitting, standing, and walking are not consistent with the evidence available at the hearing level" and cited generally to Slusser's June and October 2023 office visits with Dr. Alley as evidence of that conclusion. (*Id.*).

The ALJ then found at Step 4 that the transferability of Slusser's past work was irrelevant because it was unskilled work. (Tr. 20). At Step 5, the ALJ found that Slusser could perform other jobs that existed in significant numbers in the national economy, such as cashier, sales attendant, and information clerk. (Tr. 21). Having reached these conclusions, the ALJ determined that Slusser had not met the demanding showing necessary to sustain this claim for benefits and denied his claim. (*Id.*).

This appeal followed. (Doc. 1). On appeal, Slusser challenges the adequacy of the ALJ's decision, arguing it is not supported by substantial evidence. (Doc. 12 at 8-14). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record,

we conclude that the ALJ's decision should be remanded for further consideration by the Commissioner in accordance with this decision.

## III.  Discussion

### A.  Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations

10

omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No.

3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his

decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes him from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or

she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our

14

review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the

15

course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in July of 2022, after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability

means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's

18

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D.  <u>This Case Will Be Remanded.</u>

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).  Slusser argues that the RFC in this matter is not supported by substantial evidence because it exceeds all medical opinions on record. The Commissioner counters that there is no requirement that an RFC be equal to or lesser than the medical opinions.  After consideration, we conclude that the RFC is not supported by substantial evidence.

Generally, the ALJ has broad discretion to craft the RFC based on an assessment of the record evidence.  *See* 20 C.F.R. § 416.946(c) (the ALJ "is responsible for assessing your residual functional capacity"); 20 C.F.R. § 416.945(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record").  Despite that

discretion, "[t]he administrative law judge cannot speculate as to a claimant's residual functional capacity but must have medical evidence, *and generally a medical opinion* regarding the functional capabilities of the claimant, supporting his determination." *Gormont v. Astrue,* No. 3:11-CV-2145, 2013 WL 791455, at *8 (M.D. Pa. 2013) (emphasis added).

As discussed, the ALJ in this case did not find any medical opinion persuasive. All four medical sources opined that Slusser had limitations to his ability to walk or stand, but the RFC imposes no standing or walking limitations at all. (Tr. 14-15). Thus, Slusser argues that because the RFC exceeds all medical opinions on record, the RFC is not supported by substantial evidence. *See Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity Doak could perform was consistent with [light work], and therefore the ALJ's conclusion that he could [perform light work] is not supported by substantial evidence."). Slusser argues *Doak* and its progeny stand for the proposition that an RFC can "rarely" be crafted without relying on an opinion of a medical source. (Doc. 12 at 10).[3]

---

[3] The Commissioner argues this proposition was rejected by the Third Circuit in *Chandler v. Astrue*, 667 F. 3d 356, 362 (3d Cir. 2011). But

As summarized by our sister court in the Western District: "the *Doak* decision does not hold that an ALJ's RFC findings must be based on a specific medical opinion. . . . [T]he Court of Appeals in *Doak* simply held that nothing in the particular record of that case supported the ALJ's finding that the plaintiff could perform light work." *Hornyak v. Colvin*, No. 15-74-E, 2016 WL 1255288 at *1, n. 1 (W.D. Pa. Mar. 30, 2016). Indeed, while an RFC not supported by any medical opinion is inherently suspect, such an RFC may still be supported by substantial evidence, if the ALJ clearly identifies such evidence. However, courts in this district frequently find that RFCs imposing lesser restrictions than any medical opinion found necessary are not supported by substantial evidence. *See e.g., McKean v. Colvin*, 150 F. Supp. 3d 406, 418 (M.D. Pa. 2015) (remanding where the ALJ omitted impairments the lone medical source believed were present and instead found that "based on the evidence of record [claimant's] impairments [were] non-severe" with no

---

*Doak* is binding upon this court, and *Chandler* is not. Both cases were decided by a three-member panel of the Third Circuit Court of Appeals, but *Doak* was decided first, and a three-member panel cannot override a precedential opinion of a previous three-member panel. *Government of Virgin Islands v. Mills*, 634 F.3d 746, 750 (3d Cir. 2011).

further explanation); *see also, Hobart v. Kijakazi*, No. 4:21-CV-2152, 2023 WL 2142965, at *5-*7 (M.D. Pa, Feb. 21, 2023) (RFC not supported by substantial evidence because the ALJ failed to explain why they found claimant less limited than all medical sources opined); *Kaumans v. Astrue*, No. 3:11–CV–01404, 2012 WL 5864436, at *12 (M.D. Pa. Nov. 19, 2012) (ALJ's references to "bare medical records and other non-medical evidence were insufficient" to find RFC supported by substantial evidence where it did not incorporate limitations opined necessary by medical sources).

In this case, the ALJ omitted any standing or walking limitations, despite every medical opinion setting forth limitations to those functions. More importantly, the ALJ did not justify those omissions. While the ALJ made generalized references to the medical record, he failed to explain why or how the referenced evidence caused him to discount the medical opinions. The ALJ may have relied on other evidence to properly exclude these limitations, but the decision does not adequately articulate such reliance. *See e.g., Hornyak*, 2016 WL 1255288 at *1, n. 1 (W.D. Pa. Mar. 30, 2016) (RFC exceeding all medical opinions was supported by substantial evidence because the ALJ identified specific inconsistencies

22

between claimant's testimony and the medical records, claimant appeared to withhold information from some treating sources, and claimant failed to obtain the requisite physical examinations.)

We conclude the ALJ's passing references to individual facts from the medical records are insufficient to adequately explain the omission of restrictions contained in every medical opinion of record. We therefore find the decision is not supported by substantial evidence, and remand is required for further consideration of these issues.[4] While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

---

[4] Because we find that this issue necessitates remand, we decline to analyze Slusser's other claims of error.

23

IV.    <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner will be remanded for further consideration.

An appropriate order follows.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: July 24, 2025